**No. 22-30389**

---

In the United States Court of Appeals
for the Fifth Circuit

---

VIRGINIA M. ADAMS,
*Plaintiff-Appellant*,

*v.*

Columbia/HCA of New Orleans, Incorporated, incorrectly identified by Plaintiff as
Lakeview Regional Medical Center, LLC, doing business as Lakeview Regional
Medical Center
*Defendant-Appellee.*

---

**On Appeal from**
United States District Court for the Eastern District of Louisiana
2:20-CV-3030

---

**REPLY BRIEF OF APPELLANT VIRGINIA M. ADAMS**

---

VICTOR R. FARRUGIA
State Bar No. 19324
vfarrugia@farrugialawfirm.com
FARRUGIA LAW FIRM, LLC
1340 Poydras St., Suite 2100
New Orleans, LA 70112
(504) 525-0250 (office)
(504) 293-0651 (facsimile)
Counsel for Plaintiff-Appellant
Virginia Adams

# TABLE OF CONTENTS

Contents                                                                 Page(s)

TABLE OF CONTENTS ..........................................................................2

TABLE OF AUTHORITIES.................................................................... 4

ARGUMENT…………………………………………………………...……....5

A.    Lakeview's claim, that it honored all of Adams' FMLA leave requests, does not address Adams' claim that Lakeview discouraged Adams from making requests to take FMLA leave for her tardy occurrences. …………………………………..…………………………..………5

B.    The record evidence shows that Adams' FMLA intermittent leave was approved beginning October 9, 2018…………….……………….…..……..8

C.    The record evidence shows that Shemroske discouraged Adams in writing and verbally from taking FMLA for tardy occurrences………………………..9

D.    Adams was prejudiced by Lakeview interfering with her FMLA rights by not allowing her to use FMLA intermittent leave for her tardy occurrences. …....12

E.    Adams has record evidence that Lakeview interfered with Adams' FMLA rights by requiring her to use her FMLA leave in 30-minute increments.…19

F.    Adams has alternative causes of action. Adams was terminated for using or attempting to use her FMLA leave. Alternatively, Adams was terminated because of her disability…………………………………………………....22

G.    Because Adams is protected by both the ADA and the FMLA, Lakeview violated one of the statutes when it fired Adams……………………..………26

CONCLUSION………………………………………………………………..28

CERTIFICATE OF SERVICE…………………………………………………..…..29

CERTIFICATE OF COMPLIANCE…………………………..……………………30

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791-92 (5th Cir. 2017)……………...27

*Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir.2001)…...……...7

*Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 346 (5th Cir. 2013)……………7,12

*Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107-08 (5th Cir. 1987)……….8

*Giddens v. Cmty. Educ. Ctrs., Inc.*, 540 F. App'x 381, 390 n.3 (5th Cir. 2013)…......8

*Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 668 (E.D. La. 2014)………………7

*Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001)………………..8

*Park v. Direct Energy GP, L.L.C.*, 832 Fed. Appx. 288, 290 (5th Cir. 2020)…5,12,13

*Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006)……………..……7

*White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983)………………..8

Statutes

29 U.S.C. § 2612(a)(1)(D)……………………………………………………....…27

29 U.S.C. § 2615(a)(1)……………………………………………………...…7

Regulations

29 C.F.R. § 825.205………………………………………………………………….19

29 C.F.R. 29 C.F.R. § 825.220(b)…………………………………………………..7,12

# ARGUMENT

**A. Lakeview's claim, that it honored all of Adams' FMLA leave requests, does not address Adams' claim that Lakeview discouraged Adams from making requests to take FMLA leave for her tardy occurrences.**

Adams has appealed the district court's dismissal of the interference claim that Lakeview discouraged Adams from making requests to take her FMLA leave. As cited in her Appellant Brief this Court has opined that, "interference includes not only refusing to authorize FMLA leave but also discouraging an employee from using such leave." *Park v. Direct Energy GP*, *L.L.C.*, 832 Fed. Appx. 288, 290 (5th Cir. 2020) (citation omitted) (unpublished). Appellant Br. 29.

In Adams' Memorandum in Opposition to Summary Judgment, Adams claimed that Shemroski discouraged her from using her FMLA. "It first started with Shemroske telling Adams that FMLA was not to be used to excuse tardiness but only in the case of scheduled doctors appointments. It was brought up a few times until finally Adams went and looked up the regulations and brought the pertinent part to Shemroske's attention." ROA. 2240.

In Adams' Appellant Brief, Adams argued that "when Shemroske denied Adams her right to use her FMLA leave for her tardy occurrences, in the two PIPs of 10/9/18 and 11/2/18, Lakeview violated the FMLA. ROA.2459, 2460.  Adams

was prejudiced by this violation because she was disciplined twice for tardy occurrences during this period. ROA.1339, 363. Appellant Br. 31.

Lakeview does not dispute that Shemroske discouraged Adams from making a request for FMLA leave for tardy occurrences. Lakeview argues instead that Lakeview granted all of the requests that were made, and that Adams didn't make the requests for the tardy occurrences that were written up on disciplinary actions. Lakeview argues that Adams could have requested FMLA for those tardy occurrences, even though Shenroske was instructing her not to request this leave. Lakeview argues that Adams could have retroactively requested FMLA leave for these tardy occurrences , which she could not. The arguments are addressed in this brief below.

Lakeview claims that Adams failed to identify any date on which Lakeview denied her right to use FMLA leave – whether for tardy occurrences or otherwise. Br. 18. However, Lakeview does not acknowledge Adams' interference claim that "Lakeview violated the FMLA and its own company policy when it denied or discouraged Adams' use of her FMLA leave for these occasions of being tardy." Appellant Br. 29.

Because Lakeview allowed Adams to request and take intermittent FMLA leave for tardy occurrences after January 2019, Adams was eligible for FMLA leave in October 2018 and Shemroski illegally discouraged Adams from requesting FMLA leave for tardy occurrences during those three months.

An FMLA interference claim does not require a showing of discriminatory intent. *Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 668 (E.D. La. 2014). Because Lakeview may have complied with the FMLA during certain periods of Adams' employment, does not relieve Lakeview of its legal obligations to comply with the FMLA for all periods of her employment. Because a showing of Lakeview's intent to violate the FMLA is not required, any period of noncompliance is a violation of the law.

29 U.S.C. § 2615(a)(1) prohibits an employer "from interfering with or restraining an employee from exercising, or attempting to exercise, their FMLA rights." The term "interference" includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Cuellar v. Keppel Amfels*, *L.L.C.*, 731 F.3d 342, 346 (5th Cir. 2013) (quoting 29 C.F.R. § 825.220(b)). Under the provision, "[a]n employer's action that deters an employee from participating in protected activities constitutes an 'interference' or 'restraint' of the employee's exercise of his rights." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) (citing *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir.2001)). In denying a motion for summary judgment on plaintiff's FMLA interference claim in *Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 669 (E.D. La. 2014) the district court found that there was a genuine issue of fact as to whether the supervisor discouraged the plaintiff from taking FMLA leave when

she told the plaintiff she could not take FMLA leave because employer was short staffed.

## B. The record evidence shows that Adams' FMLA intermittent leave was approved beginning October 9, 2018.

Lakeview, in its answer to the complaint, admitted that Adams' request for intermittent "FMLA was approved beginning October 9, 2018, as that is the first date she became eligible." ROA.124, paragraph 17. This is a judicial admission that cannot now be denied by Lakeview. "Normally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc*., 720 F.2d 1391, 1396 (5th Cir. 1983). A judicial admission is conclusive and withdraws a fact from contention. *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001). Accordingly, a party "may not rebut a judicial admission made in its pleadings with new evidence or testimony." *Giddens v. Cmty. Educ. Ctrs., Inc*., 540 F. App'x 381, 390 n.3 (5th Cir. 2013) (citing *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107-08 (5th Cir. 1987)).

Lakeview accuses Adams of representing a "bald untruth" that Shemroske received notice from Sedgwick that Adams intermittent FMLA leave was approved on October 9, 2018. Br. 19. However, the record evidence shows that Shemroske emailed at 4:23 pm on October 9, 2018, to Atkinson that Adams' intermittent FMLA was approved. She wrote to Atkinson that "It appears that intermittent FMLA leave

has been approved. This communication documents today's absence as such." ROA.789,788 (in that order).

This communication was 20 minutes after Shemroske received an email from Sedgwick informing her that Adams' intermittent FMLA leave was updated. Also in this communication on October 9, 2018, an absence of 5 hours and 30 minutes was reported for Adams' intermittent FMLA leave. ROA.788. This email from Sedgwick to Shemroske, as well as all of the many emails reporting each of Adams' use of her FMLA leave, states that "Managers cannot prohibit eligible employees from taking FMLA leave and cannot consider FMLA leave as a negative factor in any employment action, such as hiring, firing, promotion, or discipline. Note: You are receiving this notice because you are the supervisor on record for the above listed employee." ROA.788.

### C. The record evidence shows that Shemroske discouraged Adams in writing and verbally from taking FMLA leave for tardy occurrences.

Shemroske directly instructed Adams not to use FMLA leave for her tardy occurrences in the Employee Performance Improvement Plan ("PIP") dated October 9, 2018. ROA. 2459. Shemroske also told Adams that she was not to use FMLA leave for tardy occurrences but only for scheduled doctors appointments. ROA. 2263, paragraph 8.

Lakeview offers two unsuccessful justifications for Shemroske directing Adams not to take FMLA leave for her tardy occurrences.

"(1) Lakeview claims that by October 9 when this PIP was first issued, FMLA *could not* be applied to Adams' tardies because she had not yet been certified for leave." Br. 20. Lakeview admitted that Adams became eligible for FMLA leave on October 9, 2018. ROA. 124. Once eligible, Adams could report her FMLA leave. However, Shemroski directed Adams not to do so.  Also, Shemroske's email to Atkinson of October 9, 2018, quoted above shows that she knew that Adams' FMLA intermittent leave had been approved and that Adams had reported a doctors appointment of five and a half hours on that day. ROA. 798,788.

"(2) Lakeview claims that after her intermittent leave was approved, Adams took and was granted leave to cover each and every absence for which she submitted an LOA report." Br. 20. Submitting an LOA (leave of absence) report is a request by Adams to have her leave counted as FMLA intermittent leave. If Adams had requested FMLA leave for her tardy occurrences, she would have been insubordinate for doing what her supervisor clearly instructed her not to do. Lakeview's position that it gave her what leave she asked for does not address the obvious, which is that Adams didn't request it because Shemroske instructed her not to.

Shemroske discouraged Adams from using her FMLA leave for her tardy occurrences in the PIP signed by Adams on 11/2/18 and by Shemroske on November 1, 2018. Shemroske, in the PIP stated, "FMLA not to be applied to tardy occurrences." ROA. 2460. Lakeview's attempted justification for instructing Adams in this PIP to not use FMLA leave for her tardy occurrences at this time also fails. Lakeview is again

claiming that it did not know that Adams was approved for intermittent leave. Lakeview states that this PIP pre-dates the November 6 letter from TAFW, approving Adams' intermittent leave and putting Lakeview on notice of her approved leave." Br. 21.

First, the November 6 letter is addressed to Adams and is not a notice to Lakeview. ROA.1273.

Second, Shemroske was put on notice that Adams was eligible for FMLA in an email from Sedgwick on October 11, 2018. Megan Younker of Sedgwick states that "we will honor her eligibility and continue to process the claim." ROA.503. Sedgwick had erroneously denied Adams' leave request under FMLA that she made on October 9, 2018. The erroneous reason for the denial was that Adams had not been employed by Lakeview for at least 12 months prior to the day absence began. ROA. 504. Sedgwick corrected this denial on October 11, 2018, because Adams was previously employed with Lakeview for a total of 12 months in the past seven years. ROA.503. Once Shemroske was notified that Adams was eligible for FMLA leave, she was obligated by law not to discourage or prevent her right to apply for FMLA leave for doctors appointments and tardy occurrences. However, Shemroske did just that in the PIP of November 2, 2018.

Third, on several occasions before Shemroske met with Adams to give her the PIP of November 2, 2018, Sedgwick notified Shemroske that Adams reported taking FMLA leave. On October 22, 2018, Sedgwick gave Shemroske notice that Adams

reported intermittent FMLA leave for 1 hour and 30 minutes on October 24, 2018. ROA. 790. And in a separate email, Sedgwick gave the same notice for October 25, 2018. ROA. 791. On November 1, 2018, Sedgwick gave Shemroske notice that Adams reported intermittent FMLA leave for 1 hour and 30 minutes on November 1, 2018. ROA. 792. In all emails from Sedgwick to Shemroske that report Adam's intermittent FMLA leave, Sedgwick specifically states that "managers cannot prohibit eligible employees from taking FMLA leave." ROA. 790-792.

Shemroske discouraged Adams from taking FMLA leave for tardy absences. In addition to Shemroske's written instructions, she also told Adams that FMLA was not to be used for tardy occurrences. ROA. 2263, paragraph 8. This is interference with Adam's FMLA rights. No intent is necessary. The record evidence is sufficient to show that Lakeview interfered with Adams' FMLA rights.

### D. Adams was prejudiced by Lakeview interfering with her FMLA rights by not allowing her to use FMLA intermittent leave for her tardy occurrences.

Lakeview cites *Park v. Direct Energy GP, L.L.C.*, No. 19-20878, at *7-8 (5th Cir. Oct. 19, 2020) as support for this Court requiring a showing of prejudice as an element of an interference claim, which includes not only refusing to authorize FMLA leave but also "discouraging an employee from using such leave." *Cuellar*, 731 F.3d at 346 (per curiam) (quoting 29 C.F.R. § 825.220(b)). The facts in *Park,* which led to a finding of no prejudice to Park are easily distinguished from the facts of the case at bar. "As evidence of discouragement, Park points to

Mason's comment that he "wouldn't advise . . . taking 3 months" off. Considering the full context of the conversation and the fact that Mason affirmatively tried to help Park secure three months' leave the very next day, this innocuous comment wouldn't discourage any reasonable employee from exercising FMLA rights. Park also fails to show prejudice. Despite Mason's comment, Park requested twelve weeks of intermittent child-bonding leave, and MetLife approved his request in full." *Park v. Direct Energy GP, L.L.C.*, No. 19-20878, at *7-8 (5th Cir. Oct. 19, 2020).

In the case at bar, Lakeview interfered with Adams' FMLA rights by instructing her orally and in writing not to take FMLA leave for tardy occurrences. ROA. 2249, 2460, 2263. This was not an innocuous comment. The instruction was made in writing in two successive PIP's on October 9 and November 2, 2018. This interference is prejudicial because the verbal and written instructions were from Shemroske, who gave Adams corrective actions based on tardy occurrences on November 2, 2018 and January 11, 2019. Shemroske did not try to help Adams secure this leave. Shemroske written and verbal instructions would have discouraged a reasonable person from requesting FMLA leave for tardy occurrences. Also, Adams never did get FMLA leave for these tardy occurrences. Adams was prejudiced by this interference.

Adams was prejudiced in the months of October and November 2018 and January 2019 because she was disciplined for tardy occurrences and did not take FMLA leave, as directed by Shemroske. Adams was not paid for the time difference

between the scheduled start time and her arrival time. Whenever Adams requested and was granted intermittent FMLA, she was paid for that time if she had PTO (personal time off) available. When Adams was paid using her PTO time, her PTO balance would be reduced. If Adams had no PTO available, the Punch Detail Report would designate her not being paid for the FMLA with the designation NPFML (no pay FML). ROA. 760. For the month of October 2019, Adams had PTO hours available and would have been paid if she had requested and been granted FMLA leave for the days of October 12,15,16,17,18,22,26,29,30. The Punch Detail Report shows that only 1.25 hours of PTO was paid to Adams that month. ROA. 1300.

The record evidence shows that Adams was prejudiced by being prohibited to use her FMLA for tardy attendances. As a direct result of Adams being denied her FMLA leave rights for tardy occurrences, Shemroske disciplined Adams twice for attendance and specifically for tardy occurrences during this period. ROA 1339, 363. On the PIP of November 2, 2018, Shemroske wrote that Adams had a pattern of tardiness and that Adams had not improved her pattern of tardiness. Also in this PIP was Shemroske's directive that FMLA leave is not to be applied to tardy occurrences. ROA. 2460. In the progress update of this PIP is listed 8 tardy occurrences from October 8th to the 30th.

In a failed attempt to justify disciplining Adams for attendance, Lakeview claims that Adams was not approved for FMLA leave in early October. Br. 20, footnote 7. However, Shemroske was notified by Sedgwick that Adams was eligible for FMLA

leave on October 11, 2018. ROA 503. Then, incredulously, Lakeview claims it was justified in disciplining Adams for attendance because Adams did not request FMLA leave for her tardy occurrences. Br. 21, footnote 7. Lakeview ignores the record evidence that Adams could not apply for FMLA for tardy occurrences because Shemroske instructed her not to do so. ROA. 2459, 2460.

The second attendance disciplinary action dated 1/11/19, was referred to in Adams' Opposition to Summary Judgment. ROA. 2248,2584. Lakeview claims that this disciplinary action does not support Adams' interference claim because it played no part in her termination. Br. 21, footnote 8. There is no record cite for this self-serving conclusionary statement. It refers simply to "the full context of the rest of the record." Br. 21, footnote 8. Adams was terminated within 10 months after getting two disciplinary acts for attendance and two PIPs for improvement in attendance. In all four of these documents state that there is a possibility of termination. ROA. 1339, 363, 2459, 2460. Also, the position paper sent to the EEOC refuting Adams' EEOC charge mentions the disciplinary actions regarding attendance. ROA. 2584.

Lakeview also contends that the second disciplinary action for attendance dated January 11, 2018, does not support Adams' interference claim is that she was not prejudiced by this disciplinary action. Br. 21 footnote 8. Lakeview is confusing what the interference is. The interference is preventing Adams from taking FMLA leave. The prejudice is the disciplinary action for attendance for tardy occurrences

that would not have been tardy occurrences if Adams would have been allowed to apply for FMLA leave for these occurrences.

More evidence of prejudice is the number of tardy occurrences for which Adams was disciplined for in the written disciplinary action of January 11, 2019. ROA. 363.

They are October 12,15,16,17,18,22,26,29,30. All of these tardy occurrences were for arrival times of 11:15 for a starting time of 11:00 (rounded to the nearest 15-minute interval by Lakeview's timekeeping system. ROA. 1300.

November 2. For an arrival time of 11:15 for a starting time of 11:00. ROA. 1301.

January 8,9. For arrival times of 11:15 for a starting time of 11:00. ROA. 1303.

Adams became eligible for FMLA on October 6, 2018. Because Shemroske prohibited Adams from using FMLA for tardy occurrences, Adams did not submit FMLA requests for her tardy occurrences in October. Adams looked up the regulation and brought it to Shemroske's attention. ROA. 2263. Then Adams submitted a FMLA request for her tardy occurrence on November 1, 2018 for an 11:30 (rounded off) arrival for a 11:00 starting time. ROA. 1301. Shemroske received an email at 11:47 am that day from Sedgwick informing her that Adams had reported 30 minutes for her intermittent FMLA leave for Adams' tardy arrival at work at 11:24 am. ROA. 792, 1301. Lakeview erroneously states that Adams

"belatedly" submitted a request for FMLA to cover that absence. Br. 22. That is not the case. Adams reported her tardy occurrence as FMLA leave three minutes after she arrived at work. ROA. 1301.

Lakeview offers as a defense to Adams' interference claim that "Adams could have retroactively applied for leave, as she did many times, with the leave being granted by Lakeview. But she did not." Br. 22. This is inaccurate. The Time Away From Work Instructions to the Employee state that "you are required to report any time away from work to your supervisor within two hours of the start of your shift and to the Time Away From Work Service Center within 24 hours of the start of your shift." ROA. 1083. Therefore, after Shemroske no longer restricted Adams from using her FMLA leave for tardy occurrences in the beginning of 2019, Adams could not have rertroactively apply for tardy occurrences that occurred in October 2018.

That very same day, November 1, 2018, that Shemroske received the email from Sedgwick that Adams had reported her tardy occurrence that morning as intermittant FMLA leave, Shemroske wrote Adams' first disciplinary action for attendance (ROA. 1339) and she wrote Adams' second PIP (ROA. 2460). Shemroske met with Adams the next day and gave her the PIP with specific directions that Adams was not to use FMLA for tardy occurrences. ROA. 2460. At that same meeting, Shemnroske gave Adams her first disciplinary action for attendance. ROA. 1339. Also on this day Shemroske charged Adams with a tardy

occurrence and used that tardy on her next attendance disciplinary action of January 11, 2019, against Adams. ROA. 363. Once again Lakeview interfered with Adams' right to use her FMLA leave.

Adams was prejudiced because she did not get FMLA leave for the many days that she was written up for being tardy in the disciplinary action Shemroski gave her on January 11, 2019. She was not allowed to apply for this leave. If she had applied for this leave, Adams would have been allowed to take this FMLA leave. Lakeview has a policy that if an employee, such as Adams, got FMLA leave, that employee would have to use his or her PTO and be paid for that time. Because Adams did not have FMLA leave for all of those tardy occurrences that were caused by her illness, she was not paid for the time of these absences.

Lakeview explained its policy of paying employees on FMLA leave in its motion for summary judgment: "Lakeview requires its employees to use their PTO and FMLA concurrently…. Lakeview notified Plaintiff that it requires employees to use/ exhaust their PTO before using unpaid leave.  Plaintiff was paid, via PTO, during her FMLA intermittent leave." ROA. 1142.

In summary on the discouraging the use of FMLA leave, the record evidence shows that Lakeview interfered with Adams' right to take FMLA leave for tardy occurrences. Also, the record evidence shows that Adams was prejudiced by Lakeview disciplining her for tardy occurrences that would have been prevented if Lakeview had not interfered with her FMLA rights.

18

**E. Adams has record evidence that Lakeview interfered with Adams'
FMLA rights by requiring her to use her FMLA leave in 30-minute
increments.**

The FMLA regulations are clear on this issue. And these regulations are
necessary to have the employee employed as much as possible, to conserve on the
amount of FMLA leave used, and to conserve on the amount of PTO used if the
employer chooses to use available PTO for all FMLA leave.

> "When an employee takes FMLA leave on an intermittent or reduced
> leave schedule basis, the employer must account for the leave using an
> increment no greater than the shortest period of time that the employer uses
> to account for use of other forms of leave provided that it is not greater than
> one hour and provided further that an employee's FMLA leave entitlement
> may not be reduced by more than the amount of leave actually taken."

29 C.F.R. § 825.205

When asked what issues Adams brought up to the HR department, Adams
testified that she brought up the issue of the time keeping requirements of the FMLA.
She reported that she was required to keep FMLA time in 30-minute increments, but
Lakeview's actual time keeping is done in 15-minute increments. Adams reported
that this practice violated the FMLA. ROA. 2279. Adams testified that when she
first starting using her FMLA she was told to use her FMLA in 30-minute
increments. When Adams discovered that she was allowed under the FMLA to use

her FMLA leave in 15-minute increments she was upset because the larger time increment had used up her FMLA leave, used up her PTO, and it necessitated that she be away from work when she could have clocked in and started working. She also testified that being away from work more than she needed to be increased attention with her coworkers. ROA. 2263.

Contrary to Lakeview's claim that it calculated Adams' leave in 15-minute increments (Br. 28), it only did so after Adams reported its violations to Shemroske and to HR about her rights to use her FMLA for tardy occurrences and in 15-minute intervals, from January 15, 2019, forward. Appellant Br. 32.  Lakeview then cites times in February 2019 when Adams requested and was granted FMLA leave in 15-minute intervals. Br. 28. What Lakeview omits from its brief is that there are no 15-minute interval FMLA leave request by Adams prior to January 15, 2019. For example, these are the times of FMLA leaves granted on the following dates:

| | |
|---|---|
| 10/09/18 | 5 hours 30 minutes |
| 10/22/18 | 1 hour 30 minutes (for 10/24/18) |
| 10/22/18 | 1 hour 30 minutes (for 10/25/18) |
| 11/01/18 | 0 hours 30 minutes |
| 11/01/18 | 1 hour 30 minutes (for 11/05/18) |
| 11/01/18 | 1 hour 30 minutes (for 11/8/18) |
| 11/12/18 | 0 hours 30 minutes |
| 11/01/18 | 8 hours 0 minutes (for 11/14/18) |
| 11/01/18 | 8 hours 0 minutes (for 11/15/18) |
| 11/01/18 | 4 hours 0 minutes  (for 11/16/18 |
| 11/19/18 | 8 hours 0 minutes (for 11/20/18) |
| 12/04/18 | 1 hour 30 minutes (for 12/11/18) |
| 12/14/18 | 2 hours 0 minutes |
| 12/21/18 | 0 hours 30 minutes (for 12/17/18) |
| | Reported 3 days late |

| | |
|---|---|
| 12/04/18 | 4 hours 0 minutes (for 12/19/18) |
| 12/4/18 | 8 hours 0 minutes (for 12/20/18) |
| 12/24/18 | 0 hours 30 minutes |
| 12/26/18 | 2 hours 30 minutes |
| | Reported 2 days later |
| 12/27/18 | 0 hours 30 minutes |

All of the above 19 reports of FMLA leave requests (ROA. 788-807) are for 30-minute time increments. Lakeview told Adams to use her FMLA leave in 30-minute increments. ROA. 2263, paragraph 9.

After Adams complained that Lakeview was violating the FMLA by its practice of requiring a 30-minute time increment, Lakeview changed its policy. That is why there are FMLA leave requests calculated with the 15-minute increment after January 15, 2019.

Lakeview testified in its corporate deposition that the Chronos timekeeping system used by Lakeview tracks attendance and rounds the time records to the nearest 15-minute increment. ROA. 1756. It also testified that the version of the company intermittent FMLA leave policy that became effective on February 1, 2020, states that intermittent FMLA time may be used in increments as small as 15 minutes. This policy complies with the FMLA. However, the 2018 policy that was in effect when Adams was employed at Lakeview did not have that provision in it. ROA. 1756, 1757.

Lakeview's Chronos timekeeping system rounds attendance hours to 15-minute intervals. On the Punch Detail Report the actual punch-in and punch-out

times are recorded in columns 7 and 8. The rounded off times are in columns 3 and 4. It is easily seen that the time are rounded to the nearest 15-minute interval. ROA. 1300.

Adams was prejudiced by being forced to take more FMLA leave than she needed when she was forced to use a time increment twice as long as the time increment used by Lakeview. Because Lakeview required Adams to use her PTO, if she had PTO available, for all of her FMLA leave, the required larger time increment of 30 minutes used up both her FMLA leave and her PTO for time that she wanted to work and did not want to be on leave. When Adams was terminated she had 11.82 hours of PTO remaining. Her 2019 Payment Detail Listing shows that she was paid $376.42 for her 11.82 hours of PTO. ROA. 1271. If Lakeview had not violated the FMLA and had used the correct 15-minute increment, Adams would have used up less of her PTO and would have cashed out more PTO when she was terminated.

An example of this calculation of lost PTO value is as follows: The amount of time that Adams would have saved by reducing the amount of of these leave requests by 15 minutes for each leave request that did not as much time as shown by at least 8 minutes (accounting for rounding) would be multiplied by Adams' hourly compensation rate.

**F. Adams has alternative causes of action. Adams was terminated for using or attempting to use her FMLA leave. Alternatively, Adams was terminated because of her disability.**

Lakeview's ultimate defense to these claims of illegal termination is that it has a legitimate non-discriminatory/non-retaliatory reason for its action. However, Lakeview has given multiple reasons for termination. They are:

- In the EEOC position statement: "Charging Party (plaintiff) alleges she was discriminated against because of an unidentified disability and that she was discharged for violating the Hospital's substance abuse policy. These allegations are without merit. Charging Party's employment was terminated because she refused to do an essential function of her job." ROA. 219

- In the Motion to Dismiss: "Defendant responded to Plaintiff's charge demonstrating that Plaintiff was terminated for multiple legitimate, non-discriminatory reasons," ROA. 38

- In the motion for summary judgment: "Plaintiff Virginia Adams, former Laboratory Lead for Lakeview Regional Medical Center, Defendant, was terminated from her employment after she violated the hospital's Substance Use in the Workplace Policy. ROA. 570

Having different alleged reasons for termination is additional evidence of pretext. There are many reasons why none of the above are why Adams was terminated.

- Shemroske was aware of Adams daily use of antihistamines. ROA. 507
- Adams did not take 300mg of Benadryl at work and never stated that she was impaired. In Adams discussion with Atkinson she stated that she had taken

300mg that day. She meant that she had taken doses of Benadryl from the time she woke up around 5am until the time she went to sleep around 10pm. ROA. 1862 "I did not <u>ever</u> say that I was impaired" ROA. 1929

- Adams was perfectly capable of working in her assigned department of Urinalysis/Serology. And repeatedly said so, during the incident, in an email to the CEO Patel which was forwarded to Atkinson, and during the termination meeting. ROA. 1929 – 1930, ROA. 2132 – 2136, ROA. 2191 – 2196, ROA. 506 -507

- Approximately 4.5 hours into her shift Adams was asked to change Departments. The incident is memorialized in Adams email to the CEO Patel on 7/26/19, which states:

"I was working yesterday and a few symptoms of my disease were worse than usual. These symptoms are easily manageable with Benadryl. Everything was going very smoothly even though we were extremely busy and a bit understaffed. Then it was time for the Blood Bank tech to leave and the evening tech Marsha refused to go in Blood Bank and take over for her. Janelle then came to me and asked me to go in Blood Bank. I told Janelle I had taken some Benadryl and did not feel comfortable working in Blood Bank, but that I felt perfectly capable to perform my usual bench work and take over for Marsha in Chemistry so Marsha could focus on Blood Bank." ROA. 2132 -2136 Atkinson had this email on 7/26 prior to his interview with Adams on 7/30.

- Adams followed the medication schedule as set forth by Dr. Olivier. ROA. 1929

- Adams disputes that on October 22, 2018, Adams made an error while working in the Blood Bank, for which she was counseled. On October 22, 2018, Adams self-reported an error that highlighted a serious LIS computer issue. This was a minor error that was caught and rectified immediately.   As is customary when an issue is found, Adams printed out the error and left the printout with notes for Fast-Winston, the Blood Bank supervisor. There was a brief conversation about it with Fast-Winston but it was not written up. Shemroske or Fast- Winston later wrote this incident up as a technical error on a competency assessment form although unlike any other competency assessment forms (such as those of the comparators) there is no signatures or further action to be taken. ROA.1222–42.

- Adams disputes the final written warning for conduct/behavior. Adams' comments on the corrective action form of November 7, 2018 states that the gestures were not made to, at, or about the coworker and the laughter of several people was not at or about the coworker. ROA. 1246 November 7th was not handled per Lakeview's Respectful Workplace Policy. This policy states that the manager must immediately notify the HR Business Partner and that the HR Business Partner will perform an investigation into the complaint. Shemroske printed the policy and highlighted "rude and discourteous conduct" to attach to the Corrective Action without noticing the Responsibilities/Requirements section required of her. ROA. 692,693

- Adams did not violate the Substance Use in the Workplace Policy. Lakeview admitted that Adams did violate any of the "Prohibited Behaviors" i through viii. ROA. 2320,2321

- Adams did not violate the Substance Use in the Workplace Policy. "The purpose of this policy it is to prohibit inappropriate drug or alcohol use by our employees and students in the workplace so as to ensure the quality of care we provide to patients the safety of our workplace and a healthy work experience." ROA. 1192 Adams did not violate this purpose. Her use of Benadryl was appropriate and pursuant to her doctor's prescribed usage.

**G. Because Adams is protected by both the ADA and the FMLA, Lakeview violated one of the statutes when it fired Adams.**

On July 25, 2019, Shemroski asked Adams to go into Blood Bank. At this time when Adams was first asked to change job assignments, she told Shemroski that she had not been feeling well and had been taking Benadryl. She then stated that she did not feel comfortable moving into Blood Bank at that time. Adams offered to work in Chemistry as well as continuing to work in her own section. After Marsha agreed to work in Blood Bank, Adams continued to work in her section and Chemistry. This was an accommodation by Shemroski to accommodate Adams disability. However, after about 15 minutes of this accommodation Shemroski cancelled the accommodation and sent Adams home for what she said was being under the influence of Benadryl.

Textual comparison of the FMLA with the ADA demonstrates that the two statutes are different regarding whether the employee can perform the essential functions of the job.

"An employee who requests FMLA leave asserts he has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D) ("Entitlement to leave"). A request for a reasonable accommodation under the ADA is a claim that the employee "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) ("Definitions: Qualified Individual") …… Thus, an employee seeking FMLA leave is by nature arguing that he *cannot* perform the functions of the job, while an employee requesting a reasonable accommodation communicates that he *can* perform the essential functions of the job." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791-92 (5th Cir. 2017).

Adams was both on July 25, 2019. She was on intermittent FMLA leave and, as a person with a disability, she asked for and received an accommodation. One of the reasons given for termination was "Charging Party's employment was terminated because she refused to do an essential function of her job." ROA. 219.

Adams has a serious health condition and by applying for FMLA leave, that makes her unable to perform the functions of the position of such employee. By firing Adams for refusing to do an essential function (Adams disputes that Blood

Bank is an essential function of the job and she disputes that she refused to work in Blood Bank), Lakeview is firing Adams for having a serious health condition and being unable to perform Blood Bank. Therefore, Lakeview terminated Adams I violation of the FMLA.

Lakeview violated the ADA by refusing a reasonable accommodation that was in place when Adams was fired.

## CONCLUSION

The district court erred when it granted summary judgment. Adams requests a remand and reversal. Summary judgment should be denied and the matter should be placed on the trial docket.

Respectfully submitted,
VIRGINIA M. ADAMS,
Appellant

*s/Victor R. Farrugia*
Victor R. Farrugia
State Bar No. 19324
vfarrugia@farrugialawfirm.com
Farrugia Law Firm, LLC
1340 Poydras Street, Suite 2100
New Orleans, LA 70112
(504)525-0250 (office)
(504)2930651 (facsimile)

**CERTIFICATE OF SERVICE**

I, Victor R. Farrugia, certify that on this 28th day of November 2022, the foregoing Appellant's Reply Brief has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure on all registered counsel of record, and has been transmitted to the Clerk of Court.

*/s/ Victor R. Farrugia*
Victor R. Farrugia

## CERTIFICATE OF COMPLIANCE

1. Undersigned counsel certifies that this reply brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because:

   • This brief contains 6,416 words.

2. This motion also complies with the typeface requirements of Fed.R. App. P. 32(a)(5) and the type requirements of Fed. R. App. P. 32(a)(6) because:

   • this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2022 with a 14-point font named Times New Roman.


*/s/ Victor R. Farrugia*
Victor R. Farrugia

Attorney of Record for Appellant

Dated: November 28, 2022